Slip Op. 09-34

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                  :

CHINA PROCESSED FOOD      :
IMPORT & EXPORT COMPANY,  :
                                    :

        Plaintiff,            :

                                    :       Before:       WALLACH, Judge

        v.                :       Court No.:   07-00303

                                    :

UNITED STATES,               :

                                    :

        Defendant.      :
_____:

[Plaintiff's Motion for Judgment on the Agency Record is DENIED and the Agency's Determination is AFFIRMED.]

                                    Dated:         April 30, 2009

Trade Pacific PLLC (Robert G. Gosselink and Ji Hyun Tak) for Plaintiff China Processed Food Import & Export Company.

Michael F. Hertz, Deputy Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Richard P. Schroeder); and Deborah King, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel, for Defendant United States.

## OPINION

**Wallach, Judge:**

## I
## INTRODUCTION

     Plaintiff China Processed Food Import & Export Company ("COFCO") appears before

the court on a motion for judgment upon the agency record pursuant to USCIT Rule 56.2,

challenging determinations of the United States Department of Commerce ("Commerce" or

"Department") in Certain Preserved Mushrooms From the People's Republic of China: Final

Results of Antidumping Duty Administrative Review, 72 Fed. Reg. 44,827 (August 9, 2007),

Plaintiff's Appendix, Tab 1, Public Record ("P.R.") 162 ("<u>Final Results</u>").  This court has

jurisdiction pursuant to 28 U.S.C. § 1581(c).  Because the challenged determinations are

supported by substantial evidence and in accordance with law, they are sustained and judgment

is entered for the Defendant United States.

**II**
**BACKGROUND**

In April 2006, Commerce initiated the seventh administrative review of the antidumping

order on certain preserved mushrooms from the People's Republic of China ("PRC"). <u>Initiation</u>

<u>of Antidumping and Countervailing Duty Administrative Reviews and Deferral of</u>

<u>Administrative Reviews</u>, 71 Fed. Reg. 17,077, 17,077–78 (April 5, 2006).  The period of review

("POR") was February 1, 2005 through January 31, 2006. <u>Id.</u> at 17,078.  COFCO is an exporter

of preserved mushrooms from the PRC subject to the administrative review. <u>Id.</u>  During the

POR, a portion of the merchandise that COFCO exported was produced and supplied by Fujian

Yu Xing Fruit & Vegetable Foodstuff Development Co. ("Yu Xing") using glass jars and caps

that were provided free of charge by COFCO's U.S. customers. <u>Certain Preserved Mushrooms</u>

<u>From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative</u>

<u>Review</u>, 71 Fed. Reg. 64,930, 64,936–37 (November 6, 2006), Plaintiff's Appendix, Tab 2, P.R.

138 ("<u>Preliminary Results</u>").

Commerce considered the PRC a non-market economy ("NME") for purposes of the

underlying review and selected India as a comparable market economy country from which to

calculate normal value for the subject merchandise.[1] <u>Preliminary Results</u>, 71 Fed. Reg. at 64,936.

Among its preliminary determinations, Commerce valued the Yu Xing glass jars using the

---

[1] Plaintiff China Processed Food Import & Export Company ("COFCO") does not challenge the
designations by the U.S. Department of Commerce ("Commerce" or "Department") of either the People's Republic
of China as a non-market economy or India as an appropriate surrogate market economy.

2

February 2005 to January 2006 Indian import data for glass jars from the World Trade Atlas ("WTA"). Id. at 64,936–37; Memorandum from David M. Spooner, Assistant Secretary for Import Administration, to Stephen J. Claeys, Deputy Assistant Secretary for Import Administration, U.S. Department of Commerce, Re: Issues and Decision Memorandum for the Final Results of the 2005-2006 Administrative Review of Certain Preserved Mushrooms from the People's Republic of China (August 3, 2007), Plaintiff's Appendix, Tab 8, P.R. 157 ("Final Decision Memo") cmt. 2, at 8. Commerce relied on data classified by the Harmonized Tariff Schedule of India ("HTS-I") in its surrogate glass jar valuation. Final Decision Memo cmt. 2, at 8.

Commerce preliminarily used financial information from Indian producers including Agro Dutch Industries Limited ("Agro Dutch") to derive overhead and profit ratios for purposes of calculating normal value. Preliminary Results, 71 Fed. Reg. at 64,937. For the overhead ratio, Commerce included the "material handling charges" ("MHC") line item in Agro Dutch's financial statement in the overhead expense calculation. Final Decision Memo cmt. 6, at 14–15. This resulted in "a comparatively higher overhead ratio" than if Commerce had treated MHC as material acquisition costs. Defendant's Opposition to Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record at 20. Additionally, in its calculation of normal value, Commerce preliminarily included the value of the glass jars and caps that were provided free of charge to Yu Xing by COFCO's U.S. customers. Preliminary Results, 71 Fed. Reg. at 64,936; Final Decision Memo cmt. 7, at 16.

COFCO challenged numerous aspects of the Preliminary Results. See COFCO Case Brief, Case No. A-570-851, U.S. Department of Commerce, Import Administration (March 13, 2007), Plaintiff's Appendix, Tab 10, P.R. 153 ("COFCO Administrative Case Brief").

Commerce made certain changes in response to COFCO's concerns. See Final Results, 72 Fed.

Reg. at 44,828–29. However, the August 2007 Final Results retained the following preliminary

designations: (1) glass jar valuation based on WTA data, (2) treatment of MHC in the Agro

Dutch overhead ratio, and (3) normal value that was increased to account for free inputs. Final

Decision Memo cmt. 2, at 10–11; cmt. 6, at 15–16; cmt. 7, at 17.  Dissatisfied with these three

aspects of the Final Results, COFCO timely initiated the present challenge.

### III
### STANDARD OF REVIEW

This court will uphold an administrative antidumping determination unless it is

"unsupported by substantial evidence on the record, or otherwise not in accordance with law."

SKF USA, Inc. v. INA Walzlager Schaeffler KG, 180 F.3d 1370, 1374 (Fed. Cir. 1999) (quoting

19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence is more than a mere scintilla.  It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Aimcor, Ala. Silicon, Inc. v. United States, 154 F.3d 1375, 1378 (Fed. Cir. 1998) (quoting

Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984)).  "[T]he

possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's finding from being supported by substantial evidence." Consolo v. Fed.

Mar. Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966).

In determining the existence of substantial evidence, a reviewing court must consider

"the record as a whole, including evidence that supports as well as evidence that 'fairly detracts

from the substantiality of the evidence.'" Huaiyin Foreign Trade Corp. (30) v. United States, 322

F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562

(Fed. Cir. 1984)).  While the court must consider contradictory evidence, "the substantial

evidence test does not require that there be an absence of evidence detracting from the agency's

4

conclusion, nor is there an absence of substantial evidence simply because the reviewing court would have reached a different conclusion based on the same record." Cleo Inc. v. United States, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 487–88, 71 S. Ct. 456, 95 L. Ed. 456 (1951)).

When evaluating Commerce's statutory interpretation the court uses a two step analysis, first examining whether Congress has "directly spoken to the precise question at issue." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). If this is the case, courts then must "give effect to the unambiguously expressed intent of Congress." Id. at 842–43; see Household Credit Servs. v. Pfennig, 541 U.S. 232, 239, 124 S. Ct. 1741, 158 L. Ed. 2d 450 (2004). If instead Congress has left a "gap" for Commerce to fill, the agency's regulation is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 843–44.

In matters of statutory construction this court will show "great deference to the interpretation given the statute by the officers or agency charged with its administration." Udall v. Tallman, 380 U.S. 1, 16, 85 S. Ct. 792, 13 L. Ed. 2d 616 (1965). The agency's construction need not be the only reasonable one or even the same result this court would have reached had the question arisen in the first instance in a judicial proceeding. Id. (citing Unemployment Comp. Comm'n of Alaska v. Aragon, 329 U.S. 143, 153, 67 S. Ct. 245, 91 L. Ed. 136 (1946)). It is not the court's duty to "weigh the wisdom of, or to resolve any struggle between, competing views of the policy interest, but rather to respect legitimate policy choices made by the agency in interpreting and applying the statute." Suramericana de Aleaciones Laminadas, C.A. v. United States, 966 F.2d 660, 665 (Fed. Cir. 1992).

## IV
## DISCUSSION

COFCO challenges three aspects of the <u>Final Results</u> as unsupported by substantial

evidence. Memorandum of Points and Authorities in Support of COFCO's Motion for Judgment

Upon the Agency Record ("Plaintiff's Motion") at 1–2.  First, COFCO claims the glass jars used

by Yu Xing should have been valued using an available domestic Indian source as opposed to

what it characterizes as "overinclusive" Indian import data. <u>Id.</u> at 1, 9. Second, COFCO

challenges Commerce's use of MHC in the Agro Dutch overhead ratio. <u>Id.</u> at 1, 18. Third,

COFCO claims that Commerce improperly increased normal value to account for the glass jars

and caps provided free of charge without evidence that COFCO profited from those free inputs.

<u>Id.</u> at 1–2, 20.  As set forth in turn below after a statutory overview, each of these challenged

Commerce determinations is supported by substantial evidence and in accordance with law.

## A
## <u>Statutory Overview</u>

In an antidumping proceeding, Commerce must make "a fair comparison . . . between the

export price or constructed export price and normal value." 19 U.S.C. § 1677b(a).  In the NME

context, Commerce calculates the normal value of foreign merchandise considering the value of

each input used to produce the subject merchandise subject to certain adjustments. <u>Id.</u> §

1677b(c)(1).  In relevant part, the statute provides that Commerce

> shall determine the normal value of the subject merchandise on the basis of the
> value of the factors of production utilized in producing the merchandise and to
> which shall be added an amount for general expenses and profit plus the cost of
> containers, coverings, and other expenses. . . . [T]he valuation of the factors of
> production shall be based on the best available information regarding the values
> of such factors in a market economy country or countries considered to be
> appropriate by [Commerce].

Id.  "[T]he process of constructing foreign market value for a producer in a[n] [NME] country is difficult and necessarily imprecise." Sigma Corp. v. United States, 117 F.3d 1401, 1408 (Fed. Cir. 1997).

The statute "accords Commerce wide discretion in the valuation of factors of production." Nation Ford Chem. Co. v. United States, 166 F.3d 1373, 1377 (Fed. Cir. 1999). "However, Commerce's discretion in calculating surrogate prices is not limitless." Yantai Oriental Juice Co. v. United States, 26 CIT 605, 608–09 (2008) (citations omitted).  This court has described Commerce's discretion to calculate normal value for merchandise from an NME country as follows:

> Despite the broad latitude afforded Commerce and its substantial discretion in choosing the information it relies upon, the agency must act in a manner consistent with the underlying objective of 19 U.S.C. 1677b(c) -- to obtain the most accurate dumping margin possible.  This objective is achieved only when Commerce's choice of what constitutes the best available information evidences a rational and reasonable relationship to the factor of production it represents. . . .
>
> Since the statute does not specify what constitutes the best available information, these decisions are within Commerce's discretion.  Accordingly, Commerce need not prove that its methodology was the only way or even best way to calculate surrogate values for factors of production as long as it was reasonable.  When Commerce's method is challenged, the Court's proper role is to determine whether the methodology is in accordance with law and supported by substantial evidence.  Assuming both criteria are satisfied, the Court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology.

Shandong Huarong Gen. Corp. v. United States, 25 CIT 834, 838, 840, 159 F. Supp. 2d 714 (2001) (citation omitted).

## B
## Commerce Properly Used WTA Import Data To Calculate Surrogate Value For The Glass Jars

Throughout the administrative process, COFCO asserted that Commerce should not use what it described as "overinclusive, unreliable, and unrepresentative" WTA import data for India

7

to calculate surrogate value for the glass jars. Plaintiff's Motion at 10.  HTS-I 7010, the category

used by Commerce in deriving glass jar value from the WTA import data, is titled: "Carboys,

Bottles, Flasks, Jars, Pots, Phials, Ampoules and Other Containers, of Glass, of a Kind Used for

the Conveyance or Packing of Goods; Preserving Jars of Glass; Stoppers, Lids and Other

Closures, of Glass." COFCO's Publicly Available Information Submission (March 30, 2007),

Plaintiff's Appendix, Tab 4, P.R. 151 Ex. 11, Customs Tariff 2006-07, Import Tariff and

Chapter-wise Exemption Notifications, Chapter 70, at 1052. The specific subcategory used by

Commerce, HTS-I 7010.90.00, is titled: "Other." Id.; Final Decision Memo cmt. 2, at 8, 10.

COFCO relied upon this nomenclature to support its position that Commerce employed a

"'catch-all' category" that is "overly broad, making the WTA data unreliable for surrogate value

usage . . . because the glass jars used by Yu Xing are only ordinary glass jars." COFCO

Administrative Case Brief at 14.

COFCO provided Commerce with Indian import information from the subscription

service Infodrive India. Plaintiff's Motion at 13.  COFCO cites to precedent of this court

endorsing the use of Infodrive India information in determining surrogate values for merchandise

from the PRC. Id. at 14 (citing Dorbest Ltd. v. United States, 462 F. Supp. 2d 1262, 1284–86

(CIT 2006)).[2]  According to COFCO, here "the Infodrive India data provides . . . specific

evidence that the average Indian import price derived from HTS-I category 7010.90 is based on

---

[2] COFCO's reliance on this precedent is misplaced because, as explained by Defendant, here "Commerce did not ignore the Infodrive data and was fully aware that the World Trade Atlas [WTA] data included products other than glass jars." Defendant's Opposition to Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record ("Defendant's Opposition") at 13 (citing Memorandum from David M. Spooner, Assistant Secretary for Import Administration, to Stephen J. Claeys, Deputy Assistant Secretary for Import Administration, U.S. Department of Commerce, Re: Issues and Decision Memorandum for the Final Results of the 2005-2006 Administrative Review of Certain Preserved Mushrooms from the People's Republic of China (August 3, 2007), Plaintiff's Appendix, Tab 8, Public Record ("P.R.") 157 ("Final Decision Memo") cmt. 2, at 9 nn.18, 20, 11). Cf. Globe Metallurgical, Inc. v. United States, Slip Op. 08-105, 2008 Ct. Int'l Trade LEXIS 105 (October 1, 2008), which, while it reaches a different result is distinguishable by its reliance on a unique record.

an overly broad array of glass items that are not comparable in any way to the glass jars used by

Yu Xing." Id. at 16 (emphasis omitted). COFCO claims that "Commerce ignored the data" and

this "failure to consider the Infodrive India import data exposes the illegitimacy of Commerce's

surrogate glass value." Id. at 13.

    Commerce specifically addressed COFCO's argument based on the Infodrive India data

prior to formalizing the use of WTA data to calculate surrogate value for the glass jars. See Final

Decision Memo cmt. 2, at 11.  Commerce concluded that although the "HTS category is a basket

category which may include glass articles besides glass jars, it nevertheless includes glass jars,

and therefore is a reliable surrogate value source.  Moreover, the WTA data used in the

Preliminary Results are contemporaneous, publicly available, and representative of a broad

market average." Final Decision Memo cmt. 2, at 10.  Commerce reinforced its decision to use

WTA data by explaining that "no other usable information is available on the record which is

more specific to the glass jars used by the respondent." Id. cmt. 2, at 11.[3]

    COFCO provided financial information from the Indian producer Jagatjit Industries

Limited ("Jagatjit") that it claims should have been used to calculate surrogate value for the glass

jars instead of WTA data. This information states that Jagatjit's "major business activity" is

manufacturing of alcoholic beverages. COFCO's Publicly Available Information Submission

(March 30, 2007), Plaintiff's Appendix, Tab 7, P.R. 151 Ex. 17, Jagatjit Annual Report for the

year ended 31st March, 2006, at 5. The Jagatjit glass container division, while contributing to

---

[3] Commerce further stated that "the Department's normal practice is not to use Infodrive India to analyze
which portion of the WTA data included in the HTS subheading is specific to the input at issue, given that the
Infodrive India data do not account for all of the Indian imports which fall under a particular HTS subheading."
Final Decision Memo cmt. 2, at 11 (citation omitted).  COFCO emphasizes the first part of this statement.
Memorandum of Points and Authorities in Support of COFCO's Motion for Judgment Upon the Agency Record
("Plaintiff's Motion") at 13. However, the statement in its entirety does not support COFCO because it demonstrates
that Commerce did address the Infodrive India data, and COFCO acknowledges that the difference between the data
sets is approximately five percent. See id. at 15.

overall revenue generation, "basically caters [to] the internal demand." Id. Although "glass

bottles and jars" is listed third of Jagatjit's three principal products, id. at 34, the Jagatjit

information contains only this single reference to jars, and does not reference jars in its relevant

table of financial data, see id. at 32 (providing Jagatjit financial information for glass bottles, tins

and other containers, and plastic containers, but not jars). See Defendant's Opposition at 11.

Commerce rejected the Jagatjit glass jar value as unreliable. Final Decision Memo cmt. 2, at 10.

The Department explained that this information

> is not specific to the glass jars used by the respondent in this review. Specifically,
> data contained in Jagatjit's financial report indicate that this Indian company's
> main business is the sale of alcoholic beverages; consequently, the glass container
> value obtained from its financial report is non-specific for purposes of valuing the
> input in question.

Id.

Commerce properly used WTA Indian import data to calculate surrogate value for glass

jars. There is no support for COFCO's assertion that the Jagatjit financial information comprises

"a more product-specific value available on the record." See Plaintiff's Motion at 11. COFCO

does not provide any record evidence that establishes the Jagatjit information as comparable with

respect to glass jars. Defendant is correct that Commerce, "faced with the choice of selecting

among imperfect alternatives," reasonably declined to employ "the vague and inconclusive

information in Jagatjit's annual report." Defendant's Opposition to Plaintiff's Rule 56.2 Motion

for Judgment Upon the Agency Record ("Defendant's Opposition") at 11. The time period

covered by the Jagatjit report does not fully correspond to the POR in this case, id. at 11 n.6, in

contrast with the WTA data dates that precisely correlate, see Final Results, 72 Fed. Reg. at

44,827. Given the lack of more suitable data, Commerce justifiably resorted to its general

preference for using WTA data over company financial information.[4] <u>See</u> <u>Final Decision Memo</u>
cmt. 2, at 10.  For these reasons, Commerce's valuation of glass jars using WTA Indian import
data instead of the Jagatjit information is supported by substantial evidence.

COFCO further challenges Commerce's ability to use import data in the surrogate
valuation of the Yu Xing glass jars by claiming a lack of record evidence that the subject
industry used imported inputs. Plaintiff's Motion at 16–17.  Defendant counters that this
argument is barred because COFCO failed to exhaust its administrative remedies. Defendant's
Opposition at 13–14.  COFCO replies that at the administrative level it "discussed at length the
general legal principle that Commerce should consider whether the industry in question would
use imported inputs when deciding the appropriate surrogate values for those inputs." Reply
Brief in Further Support of COFCO's Motion for Judgment Upon the Agency Record
("Plaintiff's Reply") at 7–8 (citing COFCO Administrative Case Brief at 4–6).  COFCO's
lengthy submission to Commerce set forth multiple bases challenging the use of WTA import
data to construct surrogate value for glass jars. COFCO Administrative Case Brief at 13–18.
COFCO stated that these were the exclusive "reason[s] the Department should calculate a new
surrogate value for glass jars." <u>See</u> <u>id.</u> at 17. However, COFCO did not argue for preclusion

---

[4] Commerce explained that "where product-specificity is not a critical factor in the Department's surrogate value determination, the Department has shown a general preference for <u>WTA</u> data over company financial statements because <u>WTA</u> data are contemporaneous, publicly available, and representative of a broad market average." <u>Final Decision Memo</u> cmt. 2, at 10. COFCO seeks to undermine this conclusion by emphasizing that Commerce additionally found "that product specificity (<u>i.e.</u>, the species of mushroom) is . . . . critical to the Department's determination as to the best available information on this record to value [fresh mushrooms]." <u>See</u> <u>Final Decision Memo</u> cmt. 1, at 7–8; Reply Brief in Further Support of COFCO's Motion for Judgment Upon the Agency Record ("Plaintiff's Reply") at 3–4 (citing <u>Final Decision Memo</u> cmt. 1, at 8).  However, because Commerce independently determines the importance of product specificity for each input, the designation for fresh mushrooms does not cast doubt upon the designation for glass jars.

based upon an alleged lack of evidence that the subject industry imported glass jars.[5] See id. at 13–18.

An agency law precept is that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Agro Dutch Indus., Ltd. v. United States, 30 CIT 320, 330 (2006) (quoting McKart v. United States, 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969)).  If a party does not first seek available recourse before the agency, "judicial review of administrative action is inappropriate." Sharp Corp v. United States, 837 F.2d 1058, 1062 (Fed. Cir. 1988).  As the Supreme Court explains, "[a] reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." Unemployment Comp. Comm'n of Alaska v. Aragon, 329 U.S. 143, 155, 67 S. Ct. 245, 91 L. Ed. 136 (1946).  This court will require exhaustion where the plaintiff both fails to raise an issue at the administrative level on which "Commerce could have conducted further analysis" and does "not show[] that any exception to the exhaustion doctrine applies." China First Pencil Co., Ltd. v. United States, 427 F. Supp. 2d 1236, 1244 (CIT 2006); see 28 U.S.C. § 2637(d).

COFCO cannot now raise its new argument that Commerce is precluded from using import data to calculate surrogate glass jar value.  Its failure to raise this issue during the administrative proceedings deprived Commerce of the "opportunity to consider the matter, make

---

[5] COFCO argued in the administrative proceedings that "[b]ecause no domestic industry in India or China uses imported fresh mushrooms to produce subject merchandise . . . the Department choice of import data to value fresh mushroom inputs is not reasonable." COFCO Case Brief, Case No. A-570-851, U.S. Department of Commerce, Import Administration (March 13, 2007), Plaintiff's Appendix, Tab 10, P.R. 153, at 6 ("COFCO Administrative Case Brief").  However, because COFCO did not make this argument with respect to glass jars, its citation to Commerce's conclusion concerning the value of fresh mushrooms does not support its having exhausted administrative remedies for the same argument as applied to glass jars. See Plaintiff's Reply at 8 (citing Final Decision Memo cmt. 1, at 6).

its ruling, and state the reason for its action." <u>See</u> <u>Aragon</u>, 329 U.S. at 155. COFCO does not

establish the applicability of an "exception to the exhaustion doctrine." <u>See</u> <u>China First Pencil</u>,

427 F. Supp. 2d at 1244. Moreover, even considering this argument, Commerce acted within its

discretion. The obligation for Commerce to use domestic data over import data is not an

absolute requirement but rather a conditional preference that can be overcome through reasoned

explanation.[6] <u>See</u> <u>Wuhan Bee Healthy Co. v. United States</u>, 29 CIT 587, 601, 374 F. Supp. 2d

1299, 1311 (2005) ("Although . . . Commerce does not have an 'unconditional preference' for

using domestic prices over import prices when valuing surrogates, . . . it must provide an

explanation that reasonably supports its decision.") (citing <u>Hebei Metals & Minerals Imp. & Exp.</u>

<u>Corp. v. United States</u>, 29 CIT 288, 303, 366 F. Supp. 2d 1264, 1277 (2005)). Commerce

explained its decision not to use the Jagatjit financial information that it found neither reliable

nor specific to the input at issue. <u>Final Decision Memo</u> cmt. 2, at 10. The substantial evidence

supporting this conclusion, described above, rebuts each of COFCO's challenges to the use of

WTA Indian import data in the valuation of glass jars.

## C
## Commerce Properly Calculated The Agro Dutch Surrogate Overhead Ratio

In NME antidumping proceedings, Commerce is to include in its normal value

calculation "an amount for general expenses." 19 U.S.C. § 1677b(c)(1). Commerce does this by

employing a ratio "with the surrogate companies' manufacturing overhead expenses as the

ratio's numerator" and "the material acquisition, direct labor, and energy costs of the surrogate

companies . . . in the ratio's denominator." Defendant's Opposition at 19 (citing <u>Tapered Roller</u>

---

[6] COFCO relies upon precedent from this court in arguing that "before Commerce can eliminate import statistics as a surrogate value option, the record must contain domestic surrogate values." Plaintiff's Motion at 17 (citing <u>Dorbest Ltd. v. United States</u>, 462 F. Supp. 2d 1262, 1279 (CIT 2006)). However, <u>Dorbest</u> does not support this proposition. <u>See</u> <u>Dorbest</u>, 462 F. Supp. 2d at 1279 ("If it is unlikely that the domestic industry would use imported inputs, and there is domestic data available, then Commerce's choice of import data to value factor inputs <u>may</u> not be reasonable.") (emphasis added).

<u>Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China:</u>
<u>Final Results of 2004-2005 Administrative Review and Partial Rescission of Review</u>, 71 Fed.
Reg. 75,936 (December 19, 2006), and accompanying Issues and Decision Memorandum cmt.
2). Here, Commerce preliminarily determined an overhead ratio using financial information
from the Indian producer Agro Dutch. <u>Preliminary Results</u>, 71 Fed. Reg. at 64,937. COFCO
requested that Commerce revisit the Agro Dutch surrogate overhead ratio calculation that
included MHC in the numerator, claiming that "[t]he Department's practice is to exclude
material-related charges from overhead expenses, and instead to include such expenses in the
materials, labor and energy denominator, because these costs are related to material acquisition
costs." COFCO Administrative Case Brief at 23 (citations omitted).

Commerce did not adjust the Agro Dutch overhead ratio as COFCO requested.
Commerce instead formalized the ratio used in the <u>Preliminary Results</u>, explaining the rationale
as there being "no indication in Agro Dutch's 2005-2006 financial report that the [MHC] line
item relates to material acquisition costs. . . . Agro Dutch's financial report does not indicate
whether the [MHC] line item also includes freight. Therefore, this line item expense may in fact
only include charges associated with moving materials within the factory."[7] <u>Final Decision</u>
<u>Memo</u> cmt. 6, at 15. Commerce further noted that "Agro Dutch treats its [MHC] as part of an
expenditure category called 'Manufacturing Expenses' in its profit and loss statement." <u>Id.</u> n.29.

---

[7] COFCO emphasizes this use of the word "may" to support its position that "Commerce merely presented its own hypothesis. Speculation, however, cannot constitute substantial evidence." Plaintiff's Motion at 19–20. COFCO provides neither record evidence that detracts from the reasonableness of Commerce's interpretation nor support for its position that the "approach contradicts past practice and the very authority upon which Defendant relies." <u>See</u> Plaintiff's Reply at 10. Commerce having previously commented upon its "practice to include in the denominator only those costs associated with materials, labor and energy" does not here render unreasonable its inclusion of material handling costs in the numerator, because these costs can plausibly be classified as manufacturing overhead expenses. <u>See</u> <u>Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Final Results of the 2004-2005 Administrative Review and Partial Rescission of Review</u>, 71 Fed. Reg. 75,936 (December 19, 2006), and accompanying Issues and Decision Memorandum cmt. 2.

This explanation by Commerce of its inclusion of MHC in the Agro Dutch surrogate overhead ratio numerator is sufficient and comprises substantial evidence supporting the determination.  Defendant is correct that "COFCO has pointed to no record evidence that the [MHC] related to the purchase of materials.  Also, COFCO has cited no record evidence rendering Commerce's interpretation unreasonable." Defendant's Opposition at 20.  COFCO has, at most, demonstrated that Commerce could have included MHC in the denominator.  However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [Commerce's] finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966).  Commerce may, as it did here, permissibly select among different possible factual interpretations of a surrogate company's financial information. See Dorbest, Ltd. v. United States, 547 F. Supp. 2d 1321, 1346 (CIT 2008) ("[I]t is not for the court to decide between two, equally plausible factual interpretations.  As such, the court cannot find unreasonable Commerce's determination.").

## D
## Commerce Properly Accounted For Free Inputs In Calculating Normal Value

To calculate normal value for merchandise in an NME country, Commerce is to value each factor of production and "add[] an amount for . . . profit." 19 U.S.C. § 1677b(c)(1). COFCO claims that Commerce erroneously "added profit to the glass jars and caps that COFCO's customers provided for free, despite the lack of any evidence that COFCO charged its U.S. customers a mark-up for the glass jars and caps."[8] Plaintiff's Motion at 1–2.  Prior to the Final Results, Commerce explained that it was treating these glass jars and caps as it had free

---

[8] At the administrative level, COFCO requested that "the Department increase U.S. prices for sales transactions (for which the U.S. customers provided the glass jars and caps) by the surrogate values of the glass jars and caps plus an additional amount that corresponds to the increase in normal value due to surrogate profit ratios." COFCO Administrative Case Brief at 26 (emphasis omitted).  Although COFCO references this U.S. price argument from the "underlying proceeding," it clarifies that "the issue on appeal is . . . whether Commerce should have

15

inputs in previous reviews. <u>Final Decision Memo</u> cmt. 7, at 17 (citing <u>Folding Metal Tables and</u>

<u>Chairs from the People's Republic of China: Final Results of Antidumping Duty Administrative</u>

<u>Review</u>, 71 Fed. Reg. 71,509 (December 11, 2006), and accompanying Issues and Decision

Memorandum cmt. 6, and <u>Certain Preserved Mushrooms from the People's Republic of China:</u>

<u>Final Results and Final Rescission, in Part, of Antidumping Duty Administrative Review</u>, 70

Fed. Reg. 54,361 (September 14, 2005), and accompanying Issues and Decision Memorandum

cmt. 13).

      In its normal value calculation, Commerce properly included profit for the glass jars and

caps that were provided free of charge to Yu Xing by COFCO's U.S. customers.  This approach

comports with the plain language of the statute that allows the addition of profit for inputs.[9] <u>See</u>

19 U.S.C. § 1677b(c)(1).  COFCO presents no basis to deviate from Commerce's previous

treatment of free inputs.  There is no support for COFCO's assertion that Commerce relied upon

the "unsubstantiated assumption" that COFCO earned any profit attributable to the free glass jars

and caps. <u>See</u> Plaintiff's Motion at 21.  Defendant is correct that the existence of any such actual

profit is "immaterial . . . . for purposes of calculating normal value." Defendant's Opposition at

17.  Therefore, the absence of record evidence pertaining to profit earned attributable to the free

inputs does not detract from the appropriateness of Commerce's normal value calculation that

added profit for the free glass jars and caps.  Consistent with both its practice and the statute,

---

included in normal value any profit amount attributable to the glass jars and caps that were provided for free to
COFCO by its [U.S.] customers." Plaintiff's Motion at 21–22.  Because COFCO is no longer challenging
Commerce's calculation of the U.S. sales prices for the subject merchandise, that aspect of the <u>Final Results</u> need
not be addressed.

    [9] COFCO accurately states that "'[a]n amount' for profit does not mean an amount for profit on all inputs."
Plaintiff's Reply at 11 (emphasis omitted) (citing 19 U.S.C. § 1677b(c)(1)).  The statute clearly permits Commerce
to include amounts for profit on each input, as Defendant explains that Commerce "normally" does. Defendant's
Opposition at 16.  COFCO emphasizes this "acknowledgement that there are circumstances where it is not
appropriate to add an amount for profit to all factors of production." Plaintiff's Reply at 11.  However, COFCO does
not provide record support for its position that Commerce here inappropriately added profit for the free glass jars
and caps.

Commerce reasonably calculated normal value by including profit for the free inputs used in producing the subject merchandise.

**V**
**CONCLUSION**

For the above stated reasons, Commerce's determination in <u>Certain Preserved Mushrooms From the People's Republic of China: Final Results of Antidumping Duty Administrative Review</u>, 72 Fed. Reg. 44,827 (August 9, 2007) is AFFIRMED.


                                          \_\_/s/ Evan J. Wallach\_\_\_\_
                                          Evan J. Wallach, Judge

Dated: April 30, 2009
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
CHINA PROCESSED FOOD                    :
IMPORT & EXPORT COMPANY                 :
                                        :
          Plaintiff,                    :
                                        :          Before:      WALLACH, Judge
     v.                                 :          Court No.:   07-00303
                                        :
UNITED STATES,                          :
                                        :
          Defendant.                    :
_____:

<u>ORDER AND JUDGMENT</u>

This case having come before the court upon the Motion for Judgment Upon the Agency Record filed by Plaintiff China Processed Food Import & Export Co. ("Plaintiff's Motion"); the court having reviewed all pleadings and papers on file herein, having heard oral argument by each party, and after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion is DENIED; and it is further

ORDERED, ADJUDGED AND DECREED that the decision of the United States Department of Commerce in <u>Certain Preserved Mushrooms From the People's Republic of China: Final Results of Antidumping Duty Administrative Review</u>, 72 Fed. Reg. 44,827 (August 9, 2007), is hereby AFFIRMED.


___/s/ Evan J. Wallach____
Evan J. Wallach, Judge

Dated: April 30, 2009
       New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____      By: _____
                                                                           Deputy Clerk